### In re MASON'S NURSING CENTER, INC., Debtor.

### Bankruptcy No. 87–00310–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

April 13, 1987.

---

Andrew J. Nierenberg, Miami, Fla., for debtor.

## ORDER DENYING APPROVAL OF DEBTOR'S BROKERAGE COMMISSION AGREEMENT

THOMAS C. BRITTON, Chief Judge.

The debtor's requested approval, under 11 U.S.C. § 327(a) and § 363(b)(1), of a proposed brokerage commission agreement was heard on March 24 and again on April 7. Approval is denied.

The debtor owns and formerly operated a 55-bed licensed nursing home in Lake

Worth. It had ceased doing business before it sought relief under chapter 11 two months ago. The debtor contemplates either a corporate reorganization with new capital, a refinancing of existing debt, or liquidation of the corporate assets.

The proposed contract is with Healthcare Services Group, Inc., a provider of various services to the nursing home industry, which is also the largest non-insider, undisputed creditor of this debtor. This important fact was not revealed in the application except by a recital in paragraph eight of the seven-page contract attached to the application.

■ The contract, proposed by Healthcare, entitles it to six percent of the aggregate capital infusion into the debtor's estate from any source procured by Healthcare and accepted by the debtor. The agreement, therefore, stipulates a finder's fee to be paid to this key creditor, which is also the chairman of the creditors' committee, for its services as a business or real estate broker on a nonexclusive basis, but for an indefinite term.

Healthcare concedes that it is not licensed to sell the debtor's primary asset, the nursing home. Healthcare is not a "professional person" within the ambit of § 327(a) and is neither qualified nor licensed to serve as a professional broker. Approval of the contract under § 327(a) would clearly be inappropriate.

■ I agree with the debtor that this contract would constitute the "use, other than in the ordinary course of business, [of] property of the estate" within the purview of § 363(b)(1), and, therefore, could only be undertaken with this court's approval, after notice and hearing.

■ Approval is withheld, not only for the reason already referred to, but also because this is an improvident contract which was not negotiated at arm's length and because it would circumvent the statutory intent in § 503(b)(3)(D). Healthcare's status as the major unsecured creditor, as a potential supplier to the business, and as chairman of the creditors' committee gives Healthcare bargaining strength which almost assures a contract unfavorable to this desperate debtor.

Healthcare should be as keenly interested as the debtor in attracting new capital to the business or seeing that the assets are liquidated at a fair price. Healthcare would benefit in either event more than any other unsecured creditor, unless Healthcare intends to obtain some private advantage from this proposed contract. There is no reason, therefore, why Healthcare should be paid to do that which its own interest dictates it should do. If a broker is needed, the debtor should employ a professional broker with no ax to grind other than that of its client, not Healthcare.

Recognizing that most chapter 11 debtors ultimately wind up either in a chapter 7 liquidation or dismissed from bankruptcy and facing foreclosure, I could not permit this debtor to saddle a potential liquidating trustee or a foreclosing secured creditor with a potential claim by Healthcare under this unrestricted contract.

The Code contemplates that creditors be encouraged to assist the corporate reorganization or liquidation, and authorizes compensation from the debtor's estate:

"there shall be allowed administrative expenses ... including (3) the actual, necessary expenses ... incurred by ... (D) a creditor ... in making a substantial contribution in a case". § 503(b)(3)(D).

This compensation is accorded an administrative priority. If and when Healthcare makes a "substantial contribution" in this case within the scope of the foregoing provision, it will deserve and will receive compensation for its "necessary expenses" in that connection. It would be unnecessary and inappropriate to stipulate compensation in advance for services which might not meet this statutory test. It is settled, at least in this Circuit, that not every contribution by a creditor is entitled to compensation from the estate. *Matter of Multiponics, Inc.*, 622 F.2d 731, 734 (5th Cir.1980). *See also In re Interstate Stores, Inc.*, 1 B.R. 755, 757 (Bankr.S.D.N.Y.1980).

■ Finally, it should be noted that Healthcare is duty bound in its capacity as

a member of the creditors' committee to provide the very assistance for which it seeks guaranteed compensation through this proposed contract. As a member of the creditors' committee, it is explicitly denied compensation for any services under § 503(b)(3)(D). *Matter of UNR Industries, Inc.,* 736 F.2d 1136, 1139, 1141 (7th Cir. 1984). This court will not authorize a contract designed to circumvent the foregoing statutory policy.

DONE and ORDERED.